IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Capitol Specialty Insurance Corporation<br>Plaintiff,<br><br>v.<br><br>Aaron Rossi, Reditus Laboratories, LLC, and Davie and Associates Dermatopathology, P.A.<br>Defendants. | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Capitol Specialty Insurance Corporation ("CSIC"), by counsel, files this Complaint for Declaratory Judgment against Defendants Aaron Rossi, Reditus Laboratories, LLC, ("Reditus") and Davie and Associates Dermatopathology, P.A. ("DAAD").

**PARTIES**

1.      CSIC is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Middleton, Wisconsin. Thus, CSIC is a citizen of the State of Wisconsin within the meaning of 28 U.S.C. § 1332(c)(1).

2. Defendant, Aaron Rossi, upon information and belief, is an individual residing at 9571 Crossbow Dr. Bloomington, Illinois 61705. Bloomington is a city in McLean County, Illinois. Thus, Mr. Rossi is a citizen of the State of Illinois within the meaning of 28 U.S.C. § 1332(c)(1).

3. Defendant, Reditus, is an Illinois limited liability company. The members of this limited liability company, upon information and belief, are Defendant DAAD and Reditus Healthcare, LLC.

4. Defendant, DAAD is a Texas professional association with its primary office in Plano Texas. Defendant DAAD has a registered address of 1508 17th St. Plano, Texas, 75074. Thus, Defendant DAAD is a citizen of Texas.

5. Reditus Healthcare, LLC, the second member of Defendant Reditus, is an Illinois limited liability company with a principal place of business of 1805 Riverway Dr. Pekin, Illinois 61554. Upon information and belief, Aaron Rossi is the sole member of Reditus Healthcare, LLC. As stated above, Mr. Rossi is a resident of McLean County, Illinois. Thus, Reditus Healthcare, LLC, is a citizen of the State of Illinois.

6. Because its members are citizens of the States of Texas and Illinois, Defendant Reditus is a citizen of the States of Texas and Illinois within the meaning of U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because defendants reside in this District and a substantial part of the events giving rise to the claim at issue occurred in this District. Further, in accordance with the Central District of Illinois' Civil LR 40.1, "[a]ll complaints and subsequent filings in cases arising from" Tazewell and McLean Counties should be assigned and filed in the Peoria Division of the Central District of Illinois.

## BACKGROUND

9. This is an action by CSIC seeking a declaration concerning the rights and obligations of the parties under an insurance policy issued to Reditus in connection with a lawsuit captioned

*Davie and Associates Dermatopathology, P.A. v. Reditus Healthcare, LLC, et al.*, Case No. 21 L 19 (Circuit Court of the Tenth Judicial Circuit, Tazewell County, Illinois) (the "*Davie* Action.").

10. In this Complaint, CSIC seeks a judgment declaring that CSIC has no obligation to defend or indemnify Mr. Rossi or Reditus in connection with the *Davie* Action.

## STATEMENT OF FACTS

A. **The *Davie* Action**

11. On February 2, 2021, DAAD filed the *Davie* action against Mr. Rossi and Reditus in Tazewell County, Illinois.

12. On December 29, 2022, DAAD filed a Third Amended Complaint in the *Davie* Action, which is the operative complaint. Attached as Exhibit 1 is a true and correct copy of the Third Amended Complaint.[1]

13. The Third Amended Complaint contains both derivative and individual claims.

14. DAAD brought the derivative claims "on behalf of nominal defendant, Reditus." Ex. A at ¶1.

15. The Third Amended Complaint states, "[t]he gist of the derivative claims is that Aaron Rossi, aided by certain of his family members, and other joint tort-feasors, looted Reditus Labs of over $100 million through inflated compensation, conflicted transactions, mismanagement and excessive spending." *Id.*

---

[1] The Third Amended Complaint was filed under seal. The caption in the attached copy notes the same. The seal, however, was lifted by the Tazewell County Circuit Court on January 25, 2023. The Third Amended Complaint currently is a publicly available document.

16. The Third Amended Complaint describes the individual claims as claims for fraud, misappropriation, misdirection of funds, and failure to pay for services and monies owed. *Id.* at ¶3.

17. The Third Amended Complaint alleged "Rossi always intended (through his standard modus operandi with other partners) – by chicanery, dishonesty, fraud, embezzlement, breaches of fiduciary duty, and conflicts of interest – to leverage the capital as well as the medical licenses and laboratory experiences held by Dr. Davie which Rossi so dearly coveted but lacked, and then force Dr. Davie/DAAD out once the lab was established." *Id.* at ¶8.

18. In addition to Mr. Rossi and Reditus, the Third Amended Complaint asserts claims against a number of other defendants, who are not parties to this action.[2] *Id.*

B. **The Policy**

19. CSIC issued Policy No. MM20202199-01 to Reditus for the **Policy Period** April 17, 2020 to April 17, 2021 (the "Policy") (terms in bold are defined in the Policy). Attached as Exhibit 2 is a true and correct copy of the Policy.

20. The Policy provides coverage to **Insureds** under a Professional Liability Coverage Section – Claims Made (the "PL Coverage Form") and a Sexual Misconduct Liability Coverage Section – Claims Made (the "Sexual Misconduct Coverage Form").

21. The Policy defines an **Insured** as "any **Insured Entity** or **Insured Person**."

22. **Insured Entity** includes the **Named Insured**.

23. Reditus Laboratories, LLC, is the only listed **Named Insured**.

---

[2] None of the other defendants in the Third Amended Complaint are insureds under the Policy, nor have any sought coverage in connection with the *Davie* Action.

24. **Insured Person** is defined to include "any past, present or future individual who is a:… managing member, if the **Insured Entity** is a limited liability company."

25. Further, Section III.A. in the Policy provides that "[c]overage under this Policy for the **Insured Persons** listed above shall only apply while such individuals are acting within the capacity and scope of his or her duties on behalf of an **Insured Entity**."

26. Subject to the Policy's terms and conditions, the PL Coverage Form (Section I.) provides coverage under eight Insuring Agreements: A. Professional Liability Coverage – Claims Made; B. Damages to Patient's Property; C. Disciplinary Proceeding Coverage; D. Public Relations Event Coverage; E. HIPAA Claims Coverage; F. Billing Errors and Omissions Coverage; G. Subpoena Defense Coverage; and H. Evacuation Expense Coverage.

27. Subject to the Policy's terms and conditions, Insuring Agreement A. in the PL Coverage Form provides coverage for **Claims** for **Healthcare Professional Services Wrongful Acts**, defined as:

> any actual or alleged negligent act, error or omission, or series of negligent acts, errors or omissions, by an **Insured**, or a person or entity for whom an **Insured** is vicariously liable, in the performance of the following activities:
>
> 1. the rendering of or failure to render **Medical Services** to **Patients**;
> 2. the activities of an **Insured** as a member of a formal accreditation, standards of review or similar professional board or committee of the **Named Insured**, including executing the directives of such board or committee;
> 3. supervising, teaching or proctoring others at the request of the **Named Insured**;
> 4. reviewing the quality of **Medical Services**;
> 5. the performance of administrative services by an administrator or medical director (but not for direct patient care); or
> 6. the rendering of or failing to render **Good Samaritan Services**.

28. Subject to the Policy's terms and conditions, Insuring Agreement B. in the PL Coverage Form provides coverage for **Property Damage** to a **Patient's** tangible property. In relevant part,

**Property Damage** is defined as "physical injury to tangible property… or… loss of use of tangible property." **Patient** is defined as "any person or human body seeking, registered or admitted to receive **Medical Services** from an **Insured**, before, during or after registration of such services, and whether on an in-patient, out-patient or emergency basis."

29. Subject to the Policy's terms and conditions, Insuring Agreement C. in the PL Coverage Form provides **Defense Expenses** for a **Disciplinary Proceeding**, defined in the Policy to mean "an investigation or proceeding instituted against an **Insured** by a State Medical Board, or by any other state or federal administrative agency, licensing or regulatory authority responsible for regulating an **Insured's** professional conduct, alleging unprofessional conduct or misconduct in the rendering or failure to render **Medical Services** to **Patients**."

30. Subject to the Policy's terms and conditions, Insuring Agreement D. in the PL Coverage Form provides coverage for **Public Relations Event Expenses** incurred in connection with a **Public Relations Event**, which is defined in the Policy as, "any criminal investigation, complaint or indictment of an **Insured**, or any administrative, regulatory, disciplinary or licensure proceeding against an **Insured**, arising out of **Healthcare Professional Services Wrongful Acts**."

31. Subject to the Policy's terms and conditions, Insuring Agreement E. in the PL Coverage Form provides coverage for **HIPAA Defense Expenses** incurred in connection with a **HIPAA Claim**, which is defined in the Policy as, "any formal regulatory suit, action or proceeding brought by a United States governmental entity or regulatory agency, including the Department of Health and Human Services (HHS), alleging: 1. a violation of the security and privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA); or 2. any other failure to maintain the confidentiality of **Patient** information regarding **Medical Services** or information

obtained in the provision of **Medical Services**, or any unauthorized release or use of such information."

32. Subject to the Policy's terms and conditions, Insuring Agreement F. in the PL Coverage Form provides coverage for **Billing Defense Expenses** incurred in connection with a **Billing Error Claim**, which is defined in the Policy as, "a formal investigation, suit or regulatory action or proceeding brought against the **Insured** by: 1. [a] governmental or regulatory agency …; 2. [a] health insurer, commercial payor, or other entity that arranges payments for healthcare services; or 3. [a]n individual, in a Qui Tam Action pursuant to the False Claims Act."

33. Subject to the Policy's terms and conditions, Insuring Agreement G. in the PL Coverage Form provides coverage for **Subpoena Defense Expenses** incurred as a result of a **Subpoena**, which is defined in the Policy as, "any writ issued by a court or governmental agency to compel the production of documents, notes, tapes, testimony or other information or documentation related to the rendering of or failure to render **Medical Services** to **Patients**."

34. Subject to the Policy's terms and conditions, Insuring Agreement H. in the PL Coverage Form provides coverage for **Evacuation Expenses** incurred due to an **Evacuation**, which is defined in the Policy as, "the removal of all or the majority of **Patients** from one or more of the **Insured's** covered residential facilities, in response to an actual or threatened, natural or manmade, condition or event."

35. The Sexual Misconduct Coverage Form, subject to the Policy's terms and conditions, provides coverage under two Insuring Agreements: A. Sexual Liability Coverage – Claims Made; and B. Public Relations Event Coverage.

36. Subject to the Policy's terms and conditions, Insuring Agreement A. in the Sexual Misconduct Coverage Form provides coverage for **Claims** for **Sexual Misconduct Wrongful**

**Acts**, which is defined in the Policy to mean, "any act of **Sexual Misconduct** committed by an **Insured**." The Policy defines **Sexual Misconduct** as "any type of actual, alleged, attempted, suggested or proposed physical contact, speech or activity of a sexual nature, whether or not consensual, and includes sexual molestation and abuse."

37. Subject to the Policy's terms and conditions, Insuring Agreement B. in the Sexual Misconduct Coverage Form provides coverage for **Public Relations Events**, which is defined in the Policy to mean "any criminal investigation, complaint or indictment of an **Insured**, or any administrative, regulatory, disciplinary or licensure proceeding against an **Insured**, arising out of **Sexual Misconduct Wrongful Acts**."

38. Exclusion A.1. in the PL Coverage Form provides, in relevant part:

> No coverage shall be provided under this Coverage Section for **Loss**, including **Defense Expenses**, in connection with any **Claim** based upon, arising out of, resulting from or in connection with, in whole or in part, whether or not any other cause or event contributes concurrently or in any sequence to, any actual or alleged:
>
> 1. Prior Acts
>
>     **Healthcare Professional Service Wrongful Acts** which commence prior to the **Retroactive Date** for this Coverage Section, even if they continue or are repeated after the **Retroactive Date** or during the **Policy Period**[.]

39. The Policy's **Retroactive Date** is April 17, 2020.

40. Section VII. of the Policy's General Terms and Conditions sets forth the **Claim** reporting obligations of the **Insured** for Claims-Made Coverage:

> The **Insured** must, as a condition precedent to the obligations of the **Insurer** under this Policy, provide written notification to the **Insurer** of any **Claim** first made against the **Insured** during the **Policy Period** as soon as practicable after any **Insured** becomes aware of such claim, but no later than sixty (60) days after the end of the **Policy Period**.

41. Pursuant to Section VIII.B. of the Policy's General Terms and Conditions, coverage is excluded for "any claim… [b]rought by or on behalf of any **Insured** or Additional Insured against any other **Insured** or Additional Insured."

**COUNT I: No Duty to Defend or Indemnify—Mr. Rossi Does Not Qualify as an Insured for Purposes of the *Davie* Action**

42. CSIC repeats and incorporates by reference all allegations in paragraphs 1 through 41 of this Complaint.

43. The Policy, subject to its terms and conditions, provides coverage only to **Insureds**.

44. Mr. Rossi is not a **Named Insured**.

45. Mr. Rossi is a managing member of Reditus. The coverage potentially available for a managing member of Reditus under the Policy, "shall only apply while such individual[] [is] acting within the capacity and scope of his or her duties on behalf of an **Insured Entity**."

46. The conduct complained of in the Third Amended Complaint, scheming to steal from Reditus and squeezing DAAD out of the business, was not conduct within the "capacity and scope" of Mr. Rossi's duties as a managing member of Reditus.

47. CSIC is entitled to a declaratory judgment that Mr. Rossi is not entitled to coverage for the *Davie* Action under the Policy and that CSIC has no duty to defend or indemnify Mr. Rossi with respect to the *Davie* Action.

**COUNT II: No Duty to Defend or Indemnify—The Conduct Alleged in the *Davie* Action Does Not Implicate Any of the Policy's Insuring Agreements**

48. CSIC repeats and incorporates by reference all allegations in paragraphs 1 through 41 of this Complaint.

49. The conduct alleged in the *Davie* Action does not implicate any of the Insuring Agreements in the PL Coverage Form or the Sexual Misconduct Coverage Form.

50. There is no coverage under Insuring Agreement A. in the PL Coverage Form, Professional Liability Coverage – Claims Made, because the Third Amended Complaint does not allege Mr. Rossi or Reditus committed a **Healthcare Professional Services Wrongful Act**.

51. There is no coverage under Insuring Agreement B. in the PL Coverage Form, Damage to Patient's Property, because the Third Amended Complaint does not concern any **Patients** or damage to any **Patient's** tangible property.

52. There is no coverage under Insuring Agreement C. in the PL Coverage Form, Disciplinary Proceeding Coverage, because the Third Amended Complaint is not a **Disciplinary Proceeding**.

53. There is no coverage under Insuring Agreement D. in the PL Coverage Form, Public Relations Event Coverage, because the Third Amended Complaint does not concern a **Public Relations Event** or **Public Relations Event Expenses**.

54. There is no coverage under Insuring Agreement E. in the PL Coverage Form, HIPAA Claims Coverage, because the Third Amended Complaint does not involve a **HIPAA Claim**.

55. There is no coverage under Insuring Agreement F. in the PL Coverage Form, Billing Errors and Omissions Coverage, because the Third Amended Complaint is not a **Billing Error Claim** and does not concern **Billing Error Defenses**.

56. There is no coverage under Insuring Agreement G. in the PL Coverage Form, Subpoena Defense Coverage, because the Third Amended Complaint does not concern a **Subpoena** that is "related to the rendering of or failure to render **Medical Services** to **Patients**."

57. There is no coverage under Insuring Agreement H. in the PL Coverage Form, Evacuation Expense Coverage, because the Third Amended Complaint does not concern an **Evacuation** or **Evacuation Expenses**.

58. Insuring Agreement A. in the Sexual Misconduct Coverage Form, Sexual Liability Coverage – Claims Made, does not provide coverage for the Third Amended Complaint because the allegations in the Third Amended Complaint do not involve any allegations of **Sexual Misconduct Wrongful Acts**.

59. Insuring Agreement B. in the Sexual Misconduct Coverage Form, Public Relations Event Coverage, does not provide coverage for the Third Amended Complaint because the Third Amended Complaint does not involve "any criminal investigation, complaint or indictment of an **Insured**, or any administrative, regulatory, disciplinary or licensure proceeding against an **Insured**, arising out of **Sexual Misconduct Wrongful Acts**."

60. CSIC is entitled to a declaratory judgment that neither Mr. Rossi nor Reditus is entitled to coverage for the *Davie* Action under the Policy as the claim does not implicate any of the Policy's Insuring Agreements and that CSIC accordingly has no duty to defend or indemnify Mr. Rossi or Reditus with respect to the *Davie* Action.

**COUNT III: No Duty to Defend or Indemnify—CSIC Was Not Provided With Timely Notice of the Claim**

61. CSIC repeats and incorporates by reference all allegations in paragraphs 1 through 41 of this Complaint.

62. Neither Mr. Rossi nor Reditus complied with the Policy's notice requirements.

63. Section VII.A. of the Policy provides that it is a "condition precedent" to coverage that "[t]he **Insured** must… provide written notification to the **Insurer** of any **Claim** made against the **Insured** during the **Policy Period** as soon as practicable after any **Insured** becomes aware of such **Claim**, but no later than sixty (60) days after the end of the **Policy Period**."

64. The *Davie* Action was originally filed against both Mr. Rossi and Reditus on February 2, 2021.

11

65. The Policy expired on April 17, 2021.

66. CSIC first received notice of the *Davie* Action on January 13, 2023, six hundred and thirty-six days after the Policy expired.

67. Mr. Rossi and Reditus did not comply with the "condition precedent" set forth in the Policy regarding notice.

68. CSIC is entitled to a declaratory judgment that neither Mr. Rossi nor Reditus are entitled to coverage for the *Davie* Action under the Policy and that CSIC has no duty to defend or indemnify Mr. Rossi or Reditus with respect to the *Davie* Action.

**COUNT IV: No Duty to Defend or Indemnify—Coverage is Excluded by the Policy's "Insured v. Insured" Exclusion**

69. CSIC repeats and incorporates by reference all allegations in paragraphs 1 through 41 of this Complaint.

70. Exclusion B.1 of the Policy's General Terms and Conditions provides that "No coverage shall be provided under this Policy for any **Claim**… [b]rought by or on behalf of any **Insured** or Additional Insured against any other **Insured** or Additional Insured."

71. If Mr. Rossi is an **Insured** under the Policy for purposes of this matter, which he is not, the derivative portion of the *Davie* Action which was brought on behalf of Reditus will be a **Claim** brought "on behalf of" one **Insured** (Reditus) against another **Insured** (Mr. Rossi).

72. Further, if Mr. Rossi's alleged conduct makes him an **Insured** under the Policy for purposes of this matter, which it does not, DAAD, which was involved in the same conduct, also will qualify as an **Insured** because it is a "managing member" of the **Insured Entity**, a limited liability company. Thus, the individual causes of action in the *Davie* action will constitute a **Claim** "brought by" one **Insured** (DAAD) against other **Insureds** (Mr. Rossi and Reditus).

73.     Thus, any **Claim** stemming from the *Davie* Action will be excluded as a **Claim** by one **Insured** against another **Insured**. CSIC is entitled to a declaratory judgment that neither Mr. Rossi nor Reditus are entitled to coverage for the *Davie* Action under the Policy and that CSIC has no duty to defend or indemnify Mr. Rossi or Reditus with respect to the *Davie* Action.

**COUNT V: No Duty to Defend or Indemnify— The Alleged Wrongful Acts Occurred Prior to the Retroactive Date of the Policy**

74. CSIC repeats and incorporates by reference all allegations in paragraphs 1 through 41 of this Complaint.

75.     The conduct alleged in the Third Amended Complaint began prior to the Policy's April 17, 2020, **Retroactive Date**.

76.     Pursuant to Section III.A.1., the PL Coverage Form does not provide coverage for **Healthcare Professional Service Wrongful Acts** which commence prior to April 17, 2020, even if they continue or are repeated after that date.

77.     Thus, coverage for the *Davie* Action is precluded in its entirety under Insuring Agreement A. of the PL Coverage Form because the alleged misconduct began prior to April 17, 2020. CSIC is entitled to a declaratory judgment that neither Mr. Rossi nor Reditus is entitled to coverage for the *Davie* Action under Insuring Agreement A. of the PL Coverage Form of the Policy and that CSIC has no duty to defend or indemnify Mr. Rossi or Reditus with respect to the *Davie* Action under that coverage.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a) Enter a judgment in favor of CSIC and find and declare as requested above;

(b) Award CSIC attorneys' fees and costs allowable under the law; and

(c) Award CSIC such other and further relief as may be warranted.

Dated: May 24, 2023.                Respectfully submitted,

                                                  */s/ Christopher Verdugo*

Christopher A. Verdugo (ARDC #6336902)
TROUTMAN PEPPER HAMILTON SANDERS LLP
227 W. Monroe Street, Suite 3900
Chicago, Illinois 60606
(312) 759-5946
(602) 501-6542 – facsimile
chris.verdugo@troutman.com

Jordan Rubinstein (*pro hac forthcoming*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
(202) 662-2030
Jordan.Rubinstein@troutman.com

Tony Jones (*pro hac forthcoming*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
(202) 662-2074
tony.jones@troutman.com